**WO**                                                                                              SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cedric Ah Sing, ) | No. CV 12-0379-PHX-GMS (MEA) |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Corrections Corp. of America, et al., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Cedric Ah Sing, who is a Hawaiian inmate confined in the Saguaro Correctional Center (SCC), a Corrections Corporation of American (CCA) facility, in Eloy, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed for failure to state a claim with leave to amend. (Doc. 1, 5.) Plaintiff filed a First Amended Complaint, which the Court also dismissed for failure to state a claim with leave to amend. (Doc. 7, 8.) Plaintiff has filed a Second Amended Complaint. (Doc. 9.) The Court will dismiss the Second Amended Complaint for failure to state a claim and this action.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951. But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.   Second Amended Complaint

Plaintiff alleges three counts for violation of his right to receive mail, his right to petition the courts for redress of grievances, and his "Seventh Amendment right to sue." Plaintiff sues SCC employees Assistant Warden Jody Bradley and Mail Room Officer C. Robertson. Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

Plaintiff alleges the following facts: on September 27, 2011, Plaintiff filed a Racketeer Influenced and Corrupt Organization Act (RICO) case against various CCA staff[1] and wrote

---

[1] As discussed below, the RICO case was actually filed by another inmate and was dismissed for failure to state a claim.

- 2 -

1  to the Hawaii Department of the Auditor requesting a copy of a publicly available audit
2  report concerning incarceration of Hawaiian inmates by CCA in Arizona. (Doc. 9 at 3, 5.)
3  On January 13, 2012, a copy of the audit report arrived in the mail for Plaintiff, but
4  Robertson flagged it as posing a threat to safety and security of SCC. Robertson showed the
5  audit report to Bradley and the audit report was confiscated and later destroyed, rather than
6  being returned to the sender as provided in SCC rules. Plaintiff describes the copy of the
7  government report as "privileged" and constituting legal mail.

8  Plaintiff contends that his mail, i.e., the copy of the audit report, was confiscated and
9  destroyed because it contained unflattering information about CCA and its treatment of
10 Hawaiian inmates and not because it posed a threat to the security and orderly operation of
11 the institution. Plaintiff also contends that Bradley confiscated and destroyed the audit report
12 sent to Plaintiff because Bradley knew that Plaintiff had named him as a defendant in the
13 RICO suit and wanted to prevent use of the report as evidence in the RICO case.

14 **III.    Failure to State a Claim**

15 A plaintiff may seek relief for violations of his federal constitutional or statutory rights
16 under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts
17 supporting that (1) the conduct about which he complains was committed by a person acting
18 under the color of state law and (2) the conduct deprived him of a federal constitutional or
19 statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a
20 plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular
21 defendant and he must allege an affirmative link between the injury and the conduct of that
22 defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

23 **A.    Count I**

24 Plaintiff designates Count I as a claim for violation of his First Amendment right to
25 receive mail and publications. He again asserts that the report was "privileged" as legal mail.
26 Inmates retain First Amendment rights not inconsistent with their status as prisoners or with
27 legitimate penological objectives of the corrections system. See Shaw v. Murphy, 532 U.S.
28 223, 231 (2001); Clement v. California Dep't of Corr., 364 F.3d 1148, 1151 (9th Cir. 2004).

1  Under the First Amendment, mail from an inmate's attorney, or prospective attorney, 2 constitutes "legal mail" that, when appropriately labeled, is entitled to greater protection than 3 other mail. See Wolff v. McDonnell, 418 U.S. 539, 576 (1974) (stating that legal mail must 4 be specifically marked as originating from an attorney).  However, mail from a public 5 agency, and not from a particular attorney, does not constitute "legal mail" entitled to greater 6 First Amendment protections. See Grigsby v. Horel, 341 Fed. Appx. 314, 314-15 (9th Cir. 7 2009); Jenkins v. Huntley, 235 Fed. Appx. 374, 376 (7th Cir. 2007) (letter from Illinois 8 Attorney Registration and Disciplinary Commission was not legal mail where inmate was 9 not represented or seeking representation by the Commission); Kaufman v. McCaughtry, 419 10 F.3d 678, 685-86 (7th Cir. 2005) (mail from Department of Justice, nonprofit civil liberties 11 organization, and other legally oriented entities did not constitute legal mail where inmate 12 was not represented by or seeking representation by attorney with sending organization); 13 Sallier v. Brooks, 343 F.3d 868, 875-76 (6th Cir. 2003) (mail from the American Bar 14 Association and from various county clerks and register of deeds did not implicate inmate's 15 First Amendment legal mail rights).  Accordingly, the copy of the publicly-available report 16 from the Hawaii Auditor did not constitute legal mail entitled to enhanced protection.

17  Prison officials may restrict inmate First Amendment rights with respect to non-legal 18 mail if such restrictions are reasonably related to legitimate penological interests and an 19 inmate is not deprived of all means of expression. Valdez v. Rosenbaum, 302 F.3d 1039, 20 1048 (9th Cir. 2002) (citing Turner v. Safley, 482 U.S. 78, 92 (1986)).  Thus, a prisoner's 21 right to receive publications from outside the prison may be restricted. See Beard v. Banks, 22 548 U.S. 521, 531-33 (2006).  That is, "[s]ome content regulation is permissible in the prison 23 context." McCabe v. Arave, 827 F.2d 634, 638 (9th Cir. 1987); see also Thornburgh, 490 24 U.S. at 415-16.  For example, restrictions on materials containing role-playing or similar 25 fantasy games have been upheld in light of security concerns. See Bahrampour v. Lambert, 26 356 F.3d 969, 975-76 (9th Cir. 2004).  Restrictions on the receipt of sexually explicit 27 materials have also been upheld. Id. at 976; Mauro v. Arpaio, 188 F.3d 1054, 1060 (9th Cir. 28 1999) (*en banc*).  Similarly, restrictions on the receipt of publication that pose a threat to the

1   safety, security, and orderly operation of a prison have been upheld because they are
2   "reasonably related to legitimate penological interests."  Turner, 482 U.S. at 89; see
3   Thornburgh, 490 U.S. at 413 (the Turner standard applies to restrictions on incoming mail);
4   Van den Bosch v. Raemisch, 658 F.3d 778, 789 (7th Cir. 2011).

5         In this case, Plaintiff asserts that his First Amendment rights were violated by the
6   confiscation of the Hawaii Auditor's report, which reflected adversely on CCA and its
7   personnel.  Prison officials could reasonably conclude that the distribution of the report to
8   Plaintiff in one of the facilities at issue in the report was likely to pose a threat to the safety,
9   security, and orderly operation of the facility by exacerbating existing tensions between
10  inmates and staff.  See Van den Bosch, 658 F.3d at 789 (prison officials' refusal to deliver
11  copies of newsletter containing article written by inmate about the prison system was
12  rationally related to officials' legitimate penological interests in maintaining prison security
13  and discipline); see also Thornburgh, 490 U.S. at 412-13 ("The problem is not . . . in the
14  individual reading the materials in most cases.  The problem is in the material getting into
15  the prison.").

16        Plaintiff's assertion that Defendants confiscated the copy of the report mailed to him
17  to obstruct *his* RICO suit is patently contradicted by the record in that case.  While Plaintiff
18  asserts that *he* filed a RICO case against CCA and its personnel on September 27, 2011, the
19  case to which he refers was filed by another Hawaiian inmate, Edmund Abordo.  See Abordo
20  v. Corrections Corp. of America, No. CV11-1367-PHX-FJM (D. Ariz.).  On September 27,
21  2011, Abordo filed an amended complaint in which Abordo asserted RICO claims and
22  purported to add inmate Ah Sing as an additional plaintiff.  Id., doc. 45.  Inmate Ah Sing was
23  dismissed as a plaintiff from that case and that case was subsequently dismissed for failure
24  to state a claim after Abordo's subsequent unsuccessful attempt to file an amended complaint
25  that stated an actionable claim.  Id., doc. 53.  Further, although Bradley was *named* as a
26  defendant in that case, Bradley was never served with or appeared in the case.  Finally,
27  Plaintiff fails to allege any facts to support that the audit report was confiscated to impede
28  *any* litigation Plaintiff had filed.

1  In short, Plaintiff fails to plausibly allege facts to support that the copy of the audit
2 report mailed to him was confiscated for any reason other than the safety and security of the
3 institution.  Plaintiff accordingly fails to state a claim for violation of his First Amendment
4 rights.

### B. Count II (in part)

Plaintiff designates Count II as a claim for denial of access to the courts.  The right of meaningful access to the courts prohibits state officials from actively interfering with an inmate's attempt to prepare or file legal documents.  Lewis v. Casey, 518 U.S. 343, 350 (1996).  That right, however, only encompasses the ability to bring petitions or complaints to court and not to discover or even effectively litigate such claims once filed with a court.  Id. at 354; see also Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or civil rights complaint of a person in state custody will reach a court for consideration.")  The right "guarantees no particular methodology but rather, the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis, 518 U.S. at 356.  The plaintiff must allege facts to support that he was actually injured.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim."  Lewis, 518 U.S. at 348.  In other words, a plaintiff must allege facts to support that a defendant's conduct prevented him from bringing to court a non-frivolous claim that he wished to present.  Id. at 351-53.  A plaintiff "must identify a nonfrivolous, arguable underlying claim," and this underlying claim "must be described in the complaint."  Christopher v. Harbury, 536 U.S. 403, 414-15 (2002).

Plaintiff contends that he decided not to pursue *his* RICO case after the report was confiscated and destroyed. However, as discussed above, *Plaintiff* did not file that case, nor has Plaintiff set forth facts to support that any nonfrivolous claim was asserted in that case.  As noted above, that case was dismissed for failure to state an actionable claim.  Plaintiff otherwise fails to allege that he has suffered an actual injury.  Accordingly, Plaintiff fails to

1    state a claim for denial of access to the court.

2    **C.     Count III (in part)**

3    Plaintiff designates Count III as a claim for violation of his Seventh Amendment
4    rights. Specifically, he asserts that the confiscation of the report violated his Seventh
5    Amendment "right to sue."

6    The Seventh Amendment provides that "no fact tried by a jury shall be otherwise re-
7    examined in any Court of the United States, than according to the rules of the common law."
8    U.S. Const. amend. VII. As explained by the Ninth Circuit, "[t]he Seventh Amendment ...
9    guarantees a right to a jury trial for all 'common-law causes of action, [and] actions brought
10   to enforce statutory rights that are analogous to common-law causes of action ordinarily
11   decided in English law courts in the late 18th century ...." GoPets Ltd. v. Hise, 657 F.3d
12   1024, 1033 (9th Cir. 2011) (quoting Feltner v. Columbia Pictures Television, Inc., 523 U.S.
13   340, 348 (1998)).

14   Plaintiff fails to allege facts to support that the RICO action was analogous to a
15   common-law cause of action, much less that a court re-examined a fact found by a jury in
16   that case. As explained above, the RICO case was dismissed prior to service for failure to
17   state a claim. The dismissal of a complaint for failure to state a claim does not violate the
18   Seventh Amendment. Smith v. Kitchen, 156 F.3d 1025, 1029 (10th Cir. 1997) (dismissal of
19   civil rights action for failure to state a claim did not violate the plaintiff's right to a jury trial
20   under the Seventh Amendment); cf. Washington v. City of Los Angeles, 442 Fed. Appx. 522,
21   524 (9th Cir. 2011) (a summary judgment proceeding did not deprive losing party of its
22   Seventh Amendment right to a jury trial). Plaintiff fails to state a claim for violation of his
23   Seventh Amendment rights based on the dismissal of the RICO action.

24   **D.     Retaliation**

25   Finally, although not so designated, in Counts II and III, Plaintiff asserts that the audit
26   report was confiscated in retaliation for Plaintiff having previously filed cases against
27   Bradley and CCA. As the Court previously informed Plaintiff, a viable claim of First
28   Amendment retaliation contains five basic elements: (1) an assertion that a state actor took

1  some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,
2  and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that
3  the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate
4  correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Hines
5  v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show
6  (1) that the prison official acted in retaliation for the exercise of a constitutionally protected
7  right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has
8  the burden of demonstrating that his exercise of his First Amendment rights was a substantial
9  or motivating factor behind the defendants' conduct. Mt. Healthy City School Dist. Bd. of
10 Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,
11 1314 (9th Cir. 1989).

12 Plaintiff asserts that the audit report was withheld from him in retaliation for filing the
13 RICO case. However, as discussed above, the RICO suit was filed by a different inmate and
14 not by Plaintiff. Moreover, no defendant in that case was ever ordered served or ever
15 appeared in that case. Further, Plaintiff fails to allege any facts to support that Bradley or
16 Robertson knew that Plaintiff had filed the earlier RICO case, much less facts to support that
17 his involvement in that case was motivating factor in the confiscation of the audit report.
18 Plaintiff thus fails to state a claim for retaliation.

19 **IV.    Dismissal without Leave to Amend**

20 Because Plaintiff has failed to state a claim in his Second Amended Complaint, the
21 Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if
22 a complaint, as amended, is subject to dismissal." Moore v. Kayport Package Express, Inc.,
23 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is
24 particularly broad where Plaintiff has previously been permitted to amend his complaint.
25 Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated
26 failure to cure deficiencies is one of the factors to be considered in deciding whether justice
27 requires granting leave to amend. Moore, 885 F.2d at 538.

28 Plaintiff has made three efforts at crafting a viable complaint and appears unable to

do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)   Plaintiff's Second Amended Complaint (Doc. 9) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2)   The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3)   The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 19th day of October, 2012.

*A. Murray Snow*

G. Murray Snow
United States District Judge

- 9 -